USA v. Burke, et al.                      CR-96-050-M    07/18/97


UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


United States of America

        v.                                Criminal No. 96-50-1-6-M

John Burke, Stephen Burke,
Matthew McDonald, Patrick
McGonagle, Michael K. O'Halloran,
and Anthony Shea


**O R D E R**


At the pretrial conference held on July 3, 1997, the court deferred ruling on particular defense requests for evidentiary hearings that were opposed by the government.  The issues raised are resolved as follows.


I.    **Motion to Suppress Evidence from Penske Truck**
      **Document No. 360**

Defendant Stephen Burke, joined by defendants Anthony Shea, John Burke, Michael O'Halloran, and Patrick McGonagle, moves to suppress all evidence obtained from the Penske truck, which was allegedly used in the Hudson armored car robbery on grounds that the government failed to keep the truck and thereby caused "spoliation" of material evidence in violation of Burke's due process rights.  The government responds that no due process

violation occurred because the government did not intentionally fail to preserve material evidence or otherwise act in bad faith in returning the truck to Penske.[1]  Defense counsel requests a hearing at which he intends to present the testimony of eight or ten witnesses in support of the motion to suppress.  The government asserts that a hearing is unnecessary because there is no evidence that the FBI acted in bad faith.

Based upon the proffers made at the pretrial conference, it does not appear that the defense can show either that the government acted in bad faith in releasing the truck to Penske or that the government deliberately made exonerating evidence

---

[1]  In the motion, as well as and during the pretrial conference, Burke's counsel argues that the acknowledged irregularities which occurred in gathering and maintaining custody of a finger print, alleged to be Burke's (Latent Lift #15), from the Penske truck, combined with discrepancies shown by pictures of the truck compared to pictures of Latent Lift #15 demonstrate the potential exculpatory value of the truck. Defense counsel further contends that the FBI was aware of the exculpatory value of the truck when it was released to Penske Truck Leasing without restrictions, and that the truck is now unavailable for inspection.  Consequently, defense counsel contends, the government's failure to keep the truck made material evidence unavailable to the defense in violation of Burke's due process rights requiring suppression of all evidence taken from the truck.  The government responds that the FBI thoroughly investigated the truck including taking photographs of it and returned it in the ordinary course of operations to Penske when there was no longer any justification for holding it.  The government also asserts that the investigation team had no reason to think the truck itself constituted potentially exculpatory evidence when the FBI returned it to Penske.

unavailable.  See Arizona v. Youngblood, 488 U.S. 51 (1988); United States v. Femia, 9 F.3d 990, 995 (1st Cir. 1993) (to suppress evidence that government failed to preserve defendant must show that the government "(1) acted in bad faith when it destroyed evidence, which (2) possessed an apparent exculpatory value and, which (3) is to some extent irreplaceable."); and United States v. Alston, 112 F.3d 32, 35 (1st Cir. 1997) (government's good faith in handling evidence is not always a defense to a due process claim "where the government deliberately alters evidence that might otherwise have exculpated the defendant").  Accordingly, an evidentiary hearing on the question appears to be unnecessary.  Nevertheless, Burke's counsel may make a specific proffer of the testimony and evidence to be presented after which the court will reconsider the matter.

## II.  **Necessity of Franks Hearings**

Defendants Anthony Shea and Matthew McDonald move to suppress evidence seized by the government pursuant to search warrants that, defendants contend, were obtained based on affidavits that included false statements.  Shea and McDonald argue that a "Franks"[2] evidentiary hearing is necessary to

---

[2]  Franks v. Delaware, 438 U.S. 154 (1978).

3

determine whether probable cause existed to support the challenged search warrants. To be entitled to a <u>Franks</u> hearing, a defendant must overcome the presumption that an affidavit is valid by making a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the allegedly false statement is necessary to the finding of probable cause." <u>Franks</u>, 438 U.S. at 155-56; <u>accord</u> <u>United States v. Tibolt</u>, 72 F.3d 965, 973 n.7 (1st Cir. 1995), <u>cert. denied</u>, 116 S.Ct. 2554 (1996).

## A. Defendant Shea's Motion to Suppress Evidence from 62 Old Ironside Way (Document No. 295)

In support of his request for a <u>Franks</u> hearing, Shea contends that the affidavit by Agent Bulis in his application for a warrant to search the house at 62 Old Ironsides Way included a false statement that Shea was then "currently residing" at that address. In his affidavit, Shea states that the house at that address was his mother's and that he was not residing there at the time that application was made for the search warrant. Shea asserts that Agent Bulis made no attempt to corroborate the information provided by the confidential informant that the address was Shea's residence, so that the residence statement in his affidavit was made with reckless disregard for the truth.

4

Shea also argues that the question of residence was the "lynchpin" of the affidavit's allegations in support of probable cause.

To obtain a <u>Franks</u> hearing, a defendant must make an offer of proof that is more than conclusory and that is based on affidavits or otherwise reliable witness statements as to all of the <u>Franks</u> requirements. <u>United States v. Scalia</u>, 993 F.2d 984, 987 (1st Cir. 1993). Shea has not made a sufficient showing that Agent Bulis acted with reckless disregard of the truth in stating that Shea resided at 62 Old Ironside Way. Shea offers no evidence that Agent Bulis acted recklessly in relying on information about Shea's residence provided by a confidential informant with a proven history of reliability. <u>See</u> <u>United States v. Schaefer</u>, 87 F.3d 562, 566 (1st Cir. 1996) (past reliability of confidential informant's information leading to arrests[3] may be sufficient without further corroboration of information provided); <u>see also</u> <u>United States v. Soule</u>, 908 F.2d 1032, 1039 (1st Cir. 1990) (same); <u>cf.</u> <u>United States v. Khounsavanh</u>, 113 F.3d 279, 284 (1st Cir. 1997) (listing factors to be considered when assessing value of confidential informant's

---

[3] Shea offers no legal authority in support of his assertion that the confidential informant's reliability should be questioned because his past information had not lead to <u>convictions</u>.

5

information and also noting "[t]he risk that the informant is lying or in error need not be wholly eliminated"). Similarly, Shea offers no evidence that Agent Bulis should have doubted the confidential informant's basis of knowledge to identify Shea and his residence. In addition, the government demonstrates that Agent Bulis corroborated Shea's residence at 62 Old Ironside Way by checking with the Massachusetts Bureau of Probation, where Shea himself apparently listed his residence at that address, before he applied for the search warrant. See Attachment 2, Document No. 309.

As Shea has not made the necessary substantial preliminary showing entitling him to a Franks hearing on the validity of Agent Bulis's affidavit in support of the search warrant for 62 Old Ironside Way, the motion for evidentiary hearing is denied.

**B.** **Defendant McDonald's Motion to Suppress Results of Tests on Blood, Saliva, and Hair Taken Pursuant to Search Warrant Document No. 183**

McDonald also seeks a Franks hearing regarding the application for a search warrant to take samples of his blood, saliva, and hair. The government acknowledges that the challenged statements in the application affidavit were inaccurate and agrees, for purposes of McDonald's motion, that the court should assess the sufficiency of the affidavit to

6

support probable cause for the search excluding the challenged statements. Accordingly, to be entitled to a <u>Franks</u> hearing, McDonald must make a substantial preliminary showing that the challenged and stricken statements were necessary to a finding of probable cause. <u>See</u> <u>Franks</u>, 438 U.S. at 156.

"Probable cause exists when 'the affidavit upon which a warrant is founded demonstrates in some trustworthy fashion the likelihood that an offense has been committed and that there is sound reason to believe that a particular search will turn up evidence of it.'" <u>United States v. Schaefer</u>, 87 F.3d 562, 565 (1st Cir. 1996)(quoting <u>United States v. Aguirre</u>, 839 F.2d 854, 857-58 (1st Cir. 1988)). The sufficiency of an affidavit in support of a search warrant application is determined by "whether the 'totality of the circumstances' stated in the affidavit demonstrates probable cause to search either the premises or the person." <u>Khounsavanh</u>, 113 F.3d at 283 (citing <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983)). In this case, the question is whether the affidavit, absent the challenged statements, provides a "sound reason to believe" that samples of McDonald's saliva, blood, and hair "will turn up evidence of" bank robbery. <u>Schaefer</u>, 87 F.3d at 565.

The affidavit states, among other things, that police found a stolen maroon 1993 Lumina minivan and an armored car hijacked

from a bank in Hudson, New Hampshire, abandoned together, several miles from the bank, and that $500,000 in cash was missing from the armored car. In addition, the driver and guard were found dead, one in each vehicle. Confidential information from both identified and anonymous sources implicated Matthew McDonald as being one of a group of robbers, which also included Stephen Burke, who had committed the Hudson robbery. A fingerprint taken from a Penske truck linked to the robbery was identified by investigators as Stephen Burke's print. In September 1994, a reliable confidential source (with a history of providing useful information for ten years) provided information that McDonald was involved in the robbery and was going to meet with some members of the robbery group on one of two days. The FBI witnessed a meeting between McDonald and Burke on one of the specified days.

The affidavit further reveals that when McDonald was arrested in September 1994 for a parole violation, his clothes were confiscated and examined at an FBI laboratory. A maroon carpet fiber was found in his sweatshirt that "exhibit[ed] 'the same microscopic characteristics and optical properties as the carpet fibers' of the maroon Lumina van used in the robbery and murder." Affidavit at ¶ 14. Maroon carpet fibers matching the van's carpet were also found in the Penske truck and on the pant leg of the guard who was killed during the robbery. Police also

8

found certain items related to the robbery such as bank bags, bills, and maps of New Hampshire, in a burning car in Revere, Massachusetts. Also in the car was clothing that, when tested, was determined to carry human hair dissimilar to hair from the two dead guards. Also, a hard plastic mask was found at the crime scene on which enough body fluid was found to allow DNA testing in an effort to identify the individual who wore the mask. The application sought a warrant for samples of McDonald's hair, saliva, and blood to conduct DNA testing in order to make comparisons with the body fluid found on the mask, and to compare hair samples with those found on the clothes.

McDonald challenges the reliability of the confidential and anonymous informants. However, the affidavit states that the two known confidential informants each had histories of providing reliable information and the second informant's reliability was corroborated by the meeting between McDonald and Burke that was first reported and then observed by the FBI. Given the circumstances presented in this affidavit, the informants allegations were sufficiently credible and relevant to support probable cause to issue the search warrant. See Khounsavanh, 113 F.3d at 284.

McDonald has not made a sufficient showing that the challenged part of the affidavit was necessary to establish

9

probable cause for the search so as to require a <u>Franks</u> hearing, and the motion for a <u>Franks</u> hearing is denied.

### III. <u>Motion to Suppress Statements Made by Defendant Shea to James Ferguson  Document No. 288</u>

Defendant Anthony Shea, joined by Patrick McGonagle,[4] has moved to suppress statements made by Shea to James Ferguson, a government informant, while both were incarcerated at Wyatt Correctional Center in Rhode Island.  Shea has also requested an evidentiary hearing on the motion.  Upon review of Shea's motion and referenced documents and the government's response, the court concludes that no factual issues exist that would require an evidentiary hearing.

Shea makes two arguments to support his suppression motion. First he contends that his Sixth Amendment right to counsel was violated when Ferguson, while incarcerated with Shea, and while acting as a government agent, induced him to make incriminating statements even though the government was aware at the time that Shea was represented by counsel.  Second, Shea argues that the statements were involuntary so that their use against him would be in violation of his Fifth Amendment protection from coerced confession.

---

[4]  The court does not address whether Patrick McGonagle has standing to join in Shea's motion.

10

The Sixth Amendment right to counsel attaches only when an accused is charged with a crime, and attaches only with respect to the particular crime charged. Illinois v. Perkins, 496 U.S. 292, 299 (1990). Accordingly, no Sixth Amendment violation occurs when a government agent induces statements about uncharged criminal conduct although the defendant, when the statements are elicited, has been charged with a different crime and is represented by counsel relative to that different crime. Id. There is no dispute that when Shea spoke with Ferguson in the Wyatt Correctional Center, he had not been charged with the Hudson armored car robbery or with the other offenses or acts underlying the pending racketeering and conspiracy charges. Thus, statements made by Shea concerning the crimes charged here were not obtained in violation of Shea's right to counsel, which had attached only as to the Wakefield robbery.

The Fifth Amendment privilege against self-incrimination including protection from coerced confessions is not implicated in conversations between an inmate and a government agent posing as a fellow inmate absent a coercive, police-dominated atmosphere. Perkins, 496 U.S. at 296. As long as the ruse is successful, so that the suspect speaks freely to one he believes is merely another inmate, no constitutional violation occurs. Id. Shea offers no facts that would suggest that in talking to

11

Ferguson Shea believed that he was being interrogated by the government, or that any coercive circumstances attended their conversations. Accordingly, the statements Shea made to Ferguson about the crimes charged in this case were not elicited in violation of the Fifth Amendment.

For the foregoing reasons, Shea's motion for an evidentiary hearing on his motion to suppress his statements to Ferguson is denied. Shea's motion to suppress his statements to Ferguson (document no. 288) is also denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

July 18, 1997

cc:  David A. Vicinanzo, Esq.
     Peter D. Anderson, Esq.
     Matthew J. Lahey, Esq.
     Bruce E. Kenna, Esq.
     Douglas J. Miller, Esq.
     Michael J. Iacopino, Esq.
     Bjorn R. Lange, Esq.
     David H. Bownes, Esq.
     Edward D. Philpot, Jr., Esq.
     United States Marshal
     United States Probation